**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| BEYOND GAMES LIMITED, a Hong Kong limited company, | Case No. 1:20-cv-23072 |
| Plaintiff, | |
| v. | |
| YOSSI GALLO GALIMIDI, an individual, | |
| Defendant. | |

## COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiff Beyond Games Limited ("Beyond Games") alleges for its complaint against Defendant Yossi Gallo Galimidi ("Galimidi") upon personal information as to its own activities, and upon information and belief as to the activities of others, as follows:

### INTRODUCTION

1.     Galimidi created a website accessible through his pokerbros.com domain name intentionally designed to cause consumer confusion with Beyond Games' world-famous PokerBROS app, trademarks, and distinctive trade dress. Galimidi admits that he intended consumer confusion so as to acquire information about PokerBROS users for his own economic benefit. In this action, Beyond Games seeks injunctive relief, compensatory damages, and attorney's fees against Galimidi for violations of the Lanham Act (Counts I and II) and the Anticybersquatting Consumer Protection Act (Count III).

### PARTIES

2.     Plaintiff Beyond Games Limited is a Hong King limited company with its principal place of business in Hong Kong.

3.     Defendant Yossi Gallo Galimidi is an individual and a resident of Dade County, Florida.

## JURISDICTION AND VENUE

4.     This Court has original jurisdiction under 28 U.S.C. § 1331 over Beyond Games'

claims for trademark and trade-dress infringement because they arise under the Lanham Act,

15 U.S.C. § 1125(a) and the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

5.     This Court has personal jurisdiction over Galimidi because he resides in Florida in

this judicial district.

6.     Venue is proper in the United States District Court for the Southern District of

Florida under 28 U.S.C. § 1391(b) because this is the judicial district in which: (1) Galimidi

resides; (2) a substantial part of the events or omissions giving rise to Beyond Games' claims

occurred; and (3) Galimidi is subject to personal jurisdiction with respect to Beyond Games'

claims.

## FACTS

### A.     The PokerBROS Mark and trade dress is known throughout the world.

7.     PokerBROS is an online social gaming platform that has generated substantial

popularity and goodwill on a global scale since its inception in 2019. The PokerBROS App is a

downloadable online gaming platform that enables users to play poker against other online users.

8.     The PokerBROS gaming platform is available in 88 countries and has attracted over

100,000 users in May 2020 alone. Regularly, thousands of individuals log in to the PokerBROS

App and participate in online poker games.

9.     Beyond Games owns trademark rights in the word mark "PokerBROS" (the

"PokerBROS Mark" and holds United States Patent and Trademark Office applications serial

nos. 88882521 and 88882442 for the mark. The PokerBROS Mark is distinctive and has been

used in commerce in connection with the PokerBROS gaming platform since 2019.

10.     Pokerbros.net is the official PokerBROS domain, where users can download the game

through Google Play or the Apple App Store, access the platform's media guidelines, and access

the terms and conditions.

11.     Beyond Games uses distinctive colors, fonts, logos, words, shapes, cartoon-character icons and page and element organization on its website and the PokerBROS App. A copy of pages from the Beyond Games website is included as Exhibit A.

12.     Beyond Games has invested significant time, thought, and money in creating, building, and maintaining the elements of the PokerBROS Mark and trade dress. Beyond Games has extensively advertised the PokerBROS gaming platform on the internet and elsewhere using the PokerBROS Mark and trade dress. As a result of its investment, the PokerBROS Mark is widely known by the public and embodies substantial and valuable goodwill.

13.     Consumers associate the distinctive look, features, and approach of the PokerBROS Mark and trade dress with Beyond Games.

14.     Consumers recognize those elements as an indicator of the high quality and service that they receive and have come to expect from Beyond Games.

15.     Consumers recognize the PokerBROS Mark and trade dress as exclusively identifying Beyond Games and the exceptional-quality gaming experience that it provides.

16.     Beyond Games and its distinctive PokerBROS Mark and trade dress have received extensive favorable media coverage.

17.     Beyond Games has implemented significant procedures to protect against the infringement of the PokerBROS mark. For example, in its Community Rules, the platform specifically advises against using domain names that closely resemble official PokerBROS domains and requires users to "make it clear and easily noticeable that your business is in no way affiliated with PokerBROS."

**B.     Galimidi created the Infringing Website intentionally to deceive consumers.**

18.     Galimidi is the owner of the Internet domain name pokerbros.com (the "Infringing Domain Name"). The Infringing Domain Name fully incorporates the PokerBROS mark and has no other features—making it identical to the PokerBROS mark.

19.     Galimidi operates a website accessed through the Infringing Domain Name that uses the PokerBROS mark and logo (the "Infringing Website".) The Infringing Website implements

other PokerBROS brand elements without indicating to users that the website is not affiliated with PokerBROS. Exhibit B to this Complaint is a copy of the Infringing Website as it appeared on July 3, 2020.

20.   The Infringing Website has identical or nearly-identical colors, fonts, logos, words, shapes, cartoon-character icons and page and element organization to the PokerBROS trade dress.

21.   The Infringing Website is designed to cause confusion among consumers and appear affiliated with PokerBROS. Actual consumer confusion between the Infringing Website and Beyond Games is rampant. For example, users have posted questions directed towards Beyond Games on the Infringing Website. In one instance on May 4, 2020, one user noted, "I have pokerbros app and account. Can I play on my computer. Having trouble for registering on my laptop. My poker name is ***** thanks."

22.   The Infringing Website also threatens Beyond Games' painstakingly earned reputation by engaging in activities that do not meet PokerBROS' standards, such as gathering and selling users' personal information.

23.   On June 12, 2020, Galimidi sent Beyond Games an email stating that the Infringing Website has "gathered over half a million emails phone numbers and contact information. Basically I was selling data or if you want to call it leads for players that are looking to join clubs and rest a sure I set up more than 100,000 players in various clubs. Over the last 6 months I've gathered all kinds of stories, videos, and so many different things such as players complaining."

24.   Galimidi offered to sell Beyond Games the Infringing Domain Name, stating "I'm deciding to actually sell MY Pokerbros.com website if you are interested. If it doesn't hold any value to you, please have a look at it again in roughly 2 weeks..... I can almost guarantee we will be in touch."

25.   Galimidi intentionally infringed the PokerBROS Mark, including as demonstrated by his decision to choose an identical name and admission that he did so to collect and sell data.

26.   Beyond Games has been harmed by Galimidi's actions.

**C.   All conditions precedent have been met and attorneys have been retained.**

27.   All conditions precedent to the institution of this action have been waived, performed or have occurred.

28.   Beyond Games has retained the undersigned counsel to represent it in this action and is obligated to pay them a reasonable fee for their services.

**FIRST CAUSE OF ACTION**
**Trademark Infringement**
**Lanham Act, 15 U.S.C. § 1125(a)**

29.   Beyond Games incorporates Paragraphs 1–29 by reference.

30.   Beyond Games is the owner of the PokerBROS Mark.

31.   Beyond Games has used the PokerBROS Mark in commerce continuously since October 17, 2019 to identify its services and to distinguish them from those made and sold by others. Beyond Games has prominently displayed its mark on its website, the PokerBROS App, and in related marketing and advertising.

32.   Beyond Games' PokerBROS Mark is inherently distinctive or has acquired distinctiveness.

33.   Pokerbros.com is confusingly similar to the PokerBROS Mark.

34.   Galimidi has infringed the PokerBROS Mark by using "pokerbros" in connection with the sale or offering of services in commerce—and specifically for online poker—in a manner that is confusingly similar to the PokerBROS Mark.

35.   Beyond Games does not consent to Galimidi using, and never gave permission or authorization to Galimidi to use, the PokerBROS Mark or any confusingly similar name.

36.   Galimidi's use of the term "pokerbros" for online poker and related services is in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to an association, affiliate, sponsorship, or endorsement of Galimidi's goods and services with or by Beyond Games, without the permission or authorization of Beyond Games.

37.     Galimidi's current and continued use of the term "pokerbros" as described above is likely to cause confusion, to cause mistake, or to deceive the purchasing public.

38.     Galimidi's infringing acts are intentional and willful. Galimidi has admitted that the Infringing Website infringes on PokerBROS trademark and trade dress and admitted that he did so intentionally in order to cause consumer confusion for his own benefit. Galimidi has further been on notice of Plaintiff's PokerBROS Trade Dress by virtue of its long-standing use and international reknown. Galimidi is also on actual notice because he received a letter from Beyond Games' counsel describing the infringement and had a telephone call with Beyond Games' counsel.

39.     As a proximate result of Galimidi's conduct, Beyond Games has suffered, and unless Galimidi is enjoined will continue to suffer, damage to its reputation and goodwill, injury to its current and potential customer base, and damages in an amount to be determined at trial.

40.     Galimidi's conduct has irreparably harmed and, if not enjoined, will continue to irreparably harm the general public who has an inherent interest in being free from confusion, mistake, and deception.

## SECOND CAUSE OF ACTION
### Trade Dress Infringement
### Lanham Act, 15 U.S.C. § 1125(a)

41.     Beyond Games incorporates Paragraphs 1–40 by reference.

42.     Beyond Games is the owner of the PokerBROS Trade Dress.

43.     Beyond Games has used its PokerBROS Trade Dress in commerce continuously since October 17, 2019 to identify its services and to distinguish them from those made and sold by others. Beyond Games has prominently displayed its PokerBROS Trade Dress on its website, the PokerBROS App, and in related marketing and advertising.

44.     Beyond Games' PokerBROS Trade Dress is inherently distinctive or has acquired distinctiveness.

45.     Beyond Games' PokerBROS Trade Dress is nonfunctional. The PokerBROS Trade Dress is merely ornamental, incidental, and arbitrary.

46.     Galimidi has infringed the PokerBROS Trade Dress by using, in connection with the sale or offering of services in commerce, a look and feel for the Infringing Website in a manner that is confusingly similar to the PokerBROS Trade Dress, without Beyond Games' permission or authorization.

47.     Galimidi's use of the Infringing Website look and feel as described above is in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to an association, affiliate, sponsorship, or endorsement of Galimidi's goods and services with or by Plaintiff Beyond Games. Renewed use is likely to continue causing consumer confusion unless enjoined.

48.     Galimidi's infringing acts are intentional and willful. Galimidi has admitted that the Infringing Website infringes on Beyond Games' trademark and trade dress and admitted that he did so intentionally in order to cause consumer confusion for his own benefit. Galimidi has further been on notice of Beyond Games' PokerBROS Trade Dress by virtue of its long-standing use and international reknown. Galimidi is also on actual notice because he received a letter from Beyond Games' counsel describing the infringement and had a telephone call with Beyond Games' counsel.

49.     As a proximate result of Galimidi's conduct, Beyond Games has suffered, and unless Galimidi is enjoined, will continue to suffer, damage to its reputation and goodwill, injury to its current and potential customer base, and damages in an amount to be determined at trial.

50.     Galimidi's conduct has irreparably harmed and, if not enjoined, will continue to irreparably harm the general public who has an inherent interest in being free from confusion, mistake, and deception.

### THIRD CAUSE OF ACTION
### Cybersquatting
### ACPA, 15 U.S.C. § 1125(d)

51.    Beyond Games incorporates Paragraphs 1–50 by reference.

52.    Beyond Games is the owner of the PokerBROS Mark, which is protected by the Lanham Act.

53.    Galimidi registered or re-registered the Infringing Domain Name.

54.    The PokerBROS mark is distinctive and on information and belief was distinctive at the time Galimidi re-registered the Infringing Domain Name.

55.    The Infringing Domain Name is identical, nearly identical, or confusing similar to the PokerBROS Mark and Beyond Games' <pokerbros.net> domain name.

56.    Galimidi registered, trafficked in, or used the Infringing Domain Name with a bad faith intent to profit from the PokerBROS Mark.

57.    Galimidi does not have any intellectual property rights or any other rights in the PokerBROS Mark.

58.    Galimidi has not made any bona fide fair use of the PokerBROS Mark on a website accessible via the Infringing Domain Name.

59.    Galimidi's acts of cyberpiracy have caused injury to Beyond Games.

60.    By reason of Galimidi's acts as alleged herein, Beyond Games' remedy at law is not adequate to compensate it for the injuries inflicted by Galimidi. Accordingly, Beyond Games is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

61.    If Galimidi is not enjoined and restrained from his use and promotion of the Infringing Domain Name, Beyond Games and its goodwill and reputation will continue to suffer immediate, substantial and irreparable injury that cannot be adequately calculated and wholly compensated by monetary damages. Under 15 U.S.C. § 1125(d)(1)(C), Beyond Games seeks an injunction ordering Galimidi and his registrar to transfer the Infringing Domain Name to Beyond Games.

62.     By reason of Galimidi's acts alleged herein, Beyond Games is entitled to recover its actual damages, costs of the action and Galimidi's profits, or statutory damages under 15 U.S.C. 1117, on election by Beyond Games, in an amount of up to $100,000 per domain name infringement.

63.     The above-described acts of Galimidi were wilful, entitling Beyond Games to treble damages under 15 U.S.C. § 1117.

64.     This is an exceptional case making Beyond Games eligible for an award of attorneys' fees under 15 U.S.C. 1117.

65.     Finally, Beyond Games seeks a permanent injunction restraining Galimidi from registering any domain names containing the term "pokerbros" regardless of the spacing or hyphenation between the words.

## RELIEF REQUESTED

WHEREFORE, Beyond Games asks this Court to enter judgment against Galimidi on all of its causes of action as follows:

1.     Preliminary and permanent injunctive relief restraining and enjoining Galimidi, and his agents, representatives, employees, attorneys, successors and assigns, and all persons acting for, with, by, through or under him, from directly or indirectly infringing Beyond Games' trademarks or trade dress in any manner, including but not limited to:

   a.     using in any manner the trademark PokerBROS and any other term or terms likely to cause confusion therewith, including "pokerbros.com";

   b.     using in any manner any look and feel, decor, ornamentation, or other trade dress likely to cause confusion with the PokerBROS Trade Dress;

   c.     registering or using, in any manner, any internet domain name that incorporates the PokerBROS Mark or any name, mark or designation confusingly similar thereto; and

   d.     otherwise engaging in any other acts or conduct that would cause consumers to

believe that Galimidi's products or services are in any way sponsored by, authorized by, licensed by, or in any way associated with Beyond Games or with Beyond Games' products and services.

2. Preliminary and permanent injunctive relief restraining and enjoining Galimidi, and his agents, representatives, employees, attorneys, successors and assigns, and all persons acting for, with, by, through or under him, from registering, using, or trafficking in in any manner, any Internet domain name that incorporates, in whole or in part, Beyond Games' PokerBROS Mark, or any name, mark, or designation confusingly similar thereto.

3. A judgment, order, or injunction directing Galimidi to deliver up for destruction all labels, signs, prints, packages, wrappers, receptacles, and advertisements bearing the PokerBROS Mark or any other word, term, name, symbol, device, or combination thereof, likely to cause confusion therewith, including "pokerbros.com."

4. A judgment, order, or injunction directing Galimidi to engage in corrective advertising to restore, to the fullest extent possible, the value of Beyond Games' trademarks and trade dress and to correct any consumer confusion or misperceptions resulting from Defendant's infringement.

5. A judgment, order, or award of actual general and compensatory damages adequate to compensate Beyond Games for Galimidi's unlawful conduct.

6. Punitive, special, or exemplary damages as allowed by law, including an award of treble damages under 15 U.S.C. § 1117 based on a finding that this is an exceptional case because Galimidi's infringement and unfair competition was knowing and willful.

7. That the Court order Galimidi or Galimidi's registrar to transfer to Beyond Games the Infringing Domain Name and every domain name that Galimidi owns which is identical or confusingly similar to the PokerBROS Mark.

8.     Restitution and disgorgement of Galimidi's profits from infringement or obtained by Galimidi as the result of unjust enrichment, and an order directing Galimidi to account to Beyond Games for all profits he has derived from his infringement as described herein.

9.     That Galimidi be ordered to pay statutory damages under 15 U.S.C. § 1117(d), on election by Beyond Games, in an amount of $100,000.

10.    An award of Beyond Games' reasonable attorney's fees and costs, as allowed by law.

11.    An order directing Galimidi to file with the Court and serve on Beyond Games a written report under oath setting forth in detail the manner and form in which Galimidi has complied with the injunction and judgment within 30 days after the service of the injunction and judgment on Galimidi.

12.    Such other, further, and different relief as the Court may deem just and proper under the circumstances.

Dated: July 24, 2020                    Respectfully submitted,

                                        /s/Michael Spain
                                        Michael Spain
                                        Florida Bar No. 005606
                                        Email: *michael@newmanlaw.com*
                                        NEWMAN DU WORS LLP
                                        2101 Fourth Avenue, Suite 1500
                                        Seattle, WA  98121
                                        Telephone: (206) 274-2800

                                        Counsel for Plaintiff
                                        Beyond Games Limited