## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 20-23072-Civ-WILLIAMS/TORRES

BEYOND GAMES LIMITED,

     Plaintiff,

v.

YOSSI GALLO GALIMIDI,

     Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT & <u>ATTORNEYS' FEES & COSTS</u>

This matter is before the Court on Beyond Games Limited's ("Plaintiff") motion for final default judgment against Yossi Gallo Galimidi ("Defendant").   [D.E. 19]. No response was filed in opposition and the time to do so has now passed.   Therefore, Plaintiff's motion is now ripe for disposition.   After careful consideration of the motion and the record presented, Plaintiff's motion for final default judgment against Defendant should be **GRANTED**.[1]

---

[1]     On October 29, 2020, the Honorable Kathleen M. Williams referred Plaintiff's motion to the undersigned Magistrate Judge for disposition.   [D.E. 22].

## I.   BACKGROUND

Plaintiff is a Hong Kong Limited Company that owns and operates the PokerBROS gaming platform.   The platform enables players to play poker against other online users and has world-wide popularity and goodwill.   Plaintiff owns trademark rights in the word mark "PokerBROS" and holds United States Patent and Trademark Office applications serial nos. 88882521 and 88882442 for the mark.

Defendant, a resident of Dade County, Florida, created a website accessible through his pokerbros.com domain name that was intentionally designed to cause consumer confusion with Plaintiff's PokerBROS app, trademarks, and distinctive trade dress.   The infringing website implements PokerBROS brand elements and has identical or nearly-identical colors, fonts, logos, words, shapes, cartoon-character icons, and page and element organization to the PokerBROS trade dress.   Users have even posted questions directed towards Plaintiff on Defendant's website.   In one instance on May 4, 2020, one user noted, "I have pokerbros app and account. Can I play on my computer. Having trouble for registering on my laptop. My poker name is ***** thanks."

The infringing website also gathers and sells users' personal information, and Defendant offered to sell this information to Plaintiff.   On June 12, 2020, Defendant sent Plaintiff an email stating that he has "gathered over half a million emails phone numbers and contact information. Basically I was selling data or if you want to call

2

it leads for players that are looking to join clubs and rest a sure I set up more than 100,000 players in various clubs. Over the last 6 months I've gathered all kinds of stories, videos, and so many different things such as players complaining." Defendant also offered to sell Plaintiff the infringing domain name, stating "I'm deciding to actually sell MY Pokerbros.com website if you are interested. If it doesn't hold any value to you, please have a look at it again in roughly 2 weeks . . . . I can almost guarantee we will be in touch."

Plaintiff filed a complaint against Defendant on July 24, 2020 that seeks injunctive relief, statutory damages, attorneys' fees, and costs against Defendant for violations of the Lanham Act (Counts I and II) and the Anticybersquatting Consumer Protection Act (Count III).   [D.E. 1].   Defendant was properly served by alternative means on September 18, 2020 [D.E. 14] pursuant to the Court's Order dated September 14, 2020 [D.E. 11].   On October 13, 2020, after Defendant failed to appear or otherwise answer the complaint, Plaintiff moved the Court to enter default against Defendant.   [D.E. 15, 16].   The same day, the clerk of the Court entered a default against Defendant [D.E. 17] and the Court ordered Plaintiff to file a motion for entry of final default judgment against Defendant on or before October 30, 2020.   [D.E. 18].   On October 28, 2020, Plaintiff filed this motion for final default judgment and attorneys' fees and costs against Defendant.   [D.E. 19].

## II.   *APPLICABLE PRINCIPLES AND LAW*

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for obtaining default judgment.   First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court is authorized to enter a clerk's default.   *See* Fed. R. Civ. P. 55(a).   Second, after entry of the clerk's default, the court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent person.   Fed. R. Civ. P. 55(b)(2).   "The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by entry by the judgment, and is barred from contesting on appeal the facts thus established."   *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (internal quotation and citation omitted).

A court must review the sufficiency of the complaint before determining whether a moving party is entitled to default judgment pursuant to Rule 55(b).   *See United States v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206) (5th Cir. 1975)).   "While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If the admitted facts are sufficient to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount.   *See*

4

*Nishimatsu*, 515 F.2d at 1206; *see also PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1216 (S.D. Fla. 2004).

Damages may be awarded only if the record adequately reflects the basis for the award, which can be shown with submission of detailed affidavits establishing the facts necessary to support entitlement to the damages requested.   *See Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985).   Rule 55 does not require an evidentiary hearing on the appropriate amount of damages, and it is within the Court's discretion to choose whether such a hearing should takes place.   *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911-12 (11th Cir. 2011).

## III.   ANALYSIS

Plaintiff seeks injunctive relief in the form of transferring the pokerbros.com domain name to Plaintiff and permanent injunctive relief to prevent Defendant from further infringement on the PokerBROS mark and trade dress.   In addition, Plaintiff seeks $100,000 in statutory damages and an award of attorneys' fees in the amount of $36,399.50 and $1,204.75 in taxable costs, including post-judgment interest at the rate established by 28 U.S.C. § 1961.

### A.   *Trademark and Trade Dress Infringement*

Plaintiff's first two claims are trademark and trade dress infringement. "Trademarks are 'any word, name, symbol, or device, or any combination thereof

[used] to identify and distinguish [one's] goods . . . from those manufactured or sold by others and to indicate the source of the goods.'" *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1216 (11th Cir. 2000) (quoting 15 U.S.C. § 1127) (alterations in original).   To prevail on a federal trademark infringement claim, a plaintiff must demonstrate "(1) its mark was used in commerce by the defendant without the [plaintiff's] consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive." *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (quoting *Burger King Corp. v. Mason*, 710 F.2d 1480, 1491 (11th Cir. 1983)); *see also* 15 U.S.C. § 1114(1)(a).   Here, Plaintiff owns the PokerBROS mark and Defendant operated the pokerbros.com website intentionally to confuse consumers.   Plaintiff has thus adequately presented its claim of trademark infringement.

Section 43(a) of the Lanham Act creates a federal cause of action for trade dress infringement.   *See* 15 U.S.C. § 1125(a); *AmBrit v. Kraft, Inc.*, 812 F.2d 1531, 1535 (11th Cir. 1986).   Trade dress generally refers to the appearance of a product when that appearance is used to identify the producer.   *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1202 (11th Cir. 2004).   To prevail on a trade dress infringement claim, a plaintiff must prove three elements: (1) its trade dress is inherently distinctive or has acquired secondary meaning; (2) its trade dress is primarily non-functional; and (3) the defendant's trade dress is confusingly similar. *AmBrit*, 812 F.2d at 1535.   Plaintiff's trade dress features distinctive fonts, cartoon

characters, colors, logos, words, shapes, and page and element organization—all non-functional elements, and Defendant's is a near-carbon copy.   Plaintiff therefore has properly stated its claim of trade dress infringement.

### B.   _Cybersquatting_

The Anti-Cybersquatting Consumer Protection Act provides a cause of action for a trademark owner against a person who "has a bad faith intent to profit from the owner's mark and who registers, traffics in, or uses a domain name that is identical or confusingly similar to the owner's distinctive mark."   _Southern Grouts & Mortars, Inc. v. 3M Co._, 575 F.3d 1235, 1243 (11th Cir. 2009).   "Traffics" may include offering to sell a domain name to the trademark owner, which Defendant did when he contacted Plaintiff to sell the domain name.   _KB Home v. Smith_, 2014 WL 1946622, at *4 (M.D. Fla. May 14, 2014).   Defendant also used the domain name because he created and operated the website.   To determine if Defendant acted in bath faith, we must weigh nine factors:

> 1. Whether the defendant has a 'trademark or other intellectual property rights' in the domain name;
> 2. Whether the domain name refers to the legal name of the defendant;
> 3. Whether the defendant ever used the domain name 'in connection with the bona fide offering of any goods or services';
> 4. Whether the defendant has a 'bona fide noncommercial or fair use of the mark in a site accessible under the domain name';
> 5. Whether the defendant has an 'intent to divert consumers' from the mark owner's website to his own,

either for commercial gain 'or with the intent to tarnish or disparage the mark,' when that diversion could cause harm to the mark owner's goodwill;

6. Whether the defendant offers to transfer or sell the domain name for financial gain when he has not used or had an intent to use the domain name in connection with 'the bona fide offering of any goods or services';

7. Whether the defendant provides 'material and misleading false contact information when applying for the registration of the domain name' or the defendant 'intentional[ly] fail[s] to maintain accurate contact information';

8. Whether the defendant acquired multiple domain names that the defendant knows are identical or confusingly similar to distinctive marks; and

9. Whether the mark is distinctive or famous.

*Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 775-76 (11th Cir. 2015); quoting 15 U.S.C. § 1125(d)(1)(B)(i).

Defendant has no right to the domain name, PokerBROS is not Defendant's legal name, Defendant created his website to mimic Plaintiff's for the purpose of commercial gain by diverting customers away from Plaintiff's site, Defendant offered to sell the domain name to Plaintiff, Defendant used a proxy server when registering the domain name, and the PokerBROS mark is at least distinctive.  In sum, the factors weigh in finding that Defendant acted in bad faith.  Plaintiff has therefore established its cybersquatting claim.

### C.   *Injunctive Relief*

Having found that Defendant should be liable, we turn to Plaintiff's request to enjoin Defendant (1) in the form of the transfer of pokerbros.com from Defendant

to Plaintiff and (2) from engaging in various acts related to the use of the PokerBROS mark and trade dress.   The Lanham Act gives a court "power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a mark holder's rights.   15 U.S.C. § 1116(a). In fact, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988); *see also Luxottica Grp. S.p.A. v. President Optical Inc.*, 2020 WL 6115100, at *3 (S.D. Fla. May 20, 2020).   Injunctive relief is available even in the default judgment setting.  *See PetMed Express*, 336 F. Supp. 2d at 1222-23; *see* also *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease.   Therefore, plaintiff is entitled to permanent injunctive relief.") (alteration added).

A plaintiff who seeks a permanent injunction must show (1) it has suffered irreparable injury; (2) remedies at law are inadequate to compensate for that injury; (3) a remedy in equity is warranted in light of balancing the hardships between the plaintiff and defendant; and (4) the public interest would not be disserved by a permanent injunction.  *See eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 390 (2006).   And district courts are expressly authorized to order the transfer or surrender of domain names.  *See* 15 U.S.C. §§ 1125(d)(1)(C); *ABS-CBN Corp. v.*

9

*abscbn-teleserye.com*, 2017 WL 6947726, at *5 (S.D. Fla. Dec. 27, 2017).

An injunction here is appropriate because Plaintiff has demonstrated the factors necessary for a permanent injunction and it lessens the threat that Defendant will resume his infringing activities.   *See ABS-CBN*, 2017 WL 6947726, at *5 (granting a permanent injunction and ordering the transfer of a domain name because the defendant did not appear in a default judgement trademark infringement case and the factors for issuing a permanent injunction were demonstrated); *Taverna Opa Trademark Corp. v. Ismail*, 2010 WL 1838384, at *3 (S.D. Fla. May 6, 2010) (same). Accordinly, the Court should grant the injunctive relief sought.

### D.   *Statutory Damages*

The Lanham Act allows statutory damages of between $1,000 and $100,000 per infringing domain name. 15 U.S.C. § 1117(d).   "Other than providing a range amount from $1,000 to $100,000, the statute provides little guidance in determining the damage amount."   *PetMed Express, Inc.*, 336 F. Supp. 2d at 1221.   Here, Plaintiff seeks the maximum $100,000 for Defendant's infringement because it was done in bad faith.   Courts in the Eleventh Circuit have awarded somewhere between $50,000 to $100,000 per domain when there is evidence the infringer has acted in bad faith. *See id.* at 1221-22 (awarding $50,000 per domain and $100,000 total); *Richemont Int'l SA v. montblanchot.com*, 2020 WL 6701932, at *10 (S.D. Fla. Nov. 13, 2020) (awarding $100,000 per domain because of the willful and blatant nature of the infringement); *Punch Clock, Inc. v. Smart Software Develop.*, 553 F. Supp. 2d 1353,

1359 (S.D. Fla. 2008) (same).   Because Defendant acted in bad faith and the recent trend in this Circuit is to award $100,000 in those circumstances, we find that $100,000 is reasonable and should be awarded to Plaintiff.

### E.   *Attorneys' Fees*

Plaintiff next seeks reimbursement for its attorneys' fees.   Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."   15 U.S.C. § 1117(a).   The Eleventh Circuit has held that "to be an 'exceptional case' under the Lanham Act, the case must 'stand[] out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated."   *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018) (quoting *Octane Fitness, LLC v. ICON Health and Fitness*, 572 U.S. 545, 554 (2014)). This standard is more liberal than the Eleventh Circuit's previous standard for attorney's fees, "which required that a case be 'malicious, fraudulent, deliberate, and willful' in order to warrant attorneys' fees.'"   *Sream, Inc. v. Onive Food Inc.*, 2018 WL 8345099, at *3 (S.D. Fla. Sept. 27, 2018) (quoting *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994)).   "The district court has the discretion to determine whether a case stands out from others based on the totality of the circumstances."   *Domond v. PeopleNetwork APS*, 750 F. App'x 844, 847 (11th Cir. 2018).

Plaintiff's well-pleaded allegations that Defendant in bad faith adopted a mark nearly identical to Plaintiff's PokerBROS mark are enough to warrant attorneys'

11

fees.  *See Colonial Van Lines, Inc. v. Colonial Moving & Storage, LLC*, 2020 WL 6700449, at *7 (S.D. Fla. Oct. 20, 2020); *BayCare Health Sys., Inc. v. BayCare Health Mgmt. Corp.*, 2020 WL 571261, at *7 (M.D. Fla. Jan. 3, 2020).

In determining an appropriate fee award, we employ the lodestar method. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("The 'lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.   We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee").   This method allows for a reasonable estimate of the value of an attorneys' service because the movant submits evidence "supporting the hours worked and rates claimed."   *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).   If the movant's documentation of hours worked is inadequate, "the district court may reduce the award accordingly."   *Id*.

The lodestar method requires a court to first determine an attorneys' reasonable hourly rate, and to multiply that rate by the number of hours reasonably expended.   *See, e.g., Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994); *see also Harbaugh v. Greslin,* 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005).   When awarding fees using the lodestar method, a court must allow meaningful review of its decision and "articulate the decisions it made, give principled reasons for those decisions, and show its calculation."   *Norman v. Hous. Auth. of Cty. of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988) (citation omitted).

In awarding attorneys' fees, "courts are not authorized to be generous with the

money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Ga. v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999).   Courts, however, have considerable discretion when determining whether a party to a case should receive a fee award.   *See Cullens v. Ga. Dept. of Transp.,* 29 F.3d 1489, 1492-1493 (11th Cir. 1994) (emphasizing that the district court is "empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness.").

An award must be reasonable and must fall within the guidelines for fee awards promulgated by the Eleventh Circuit.   *See Norman*, 836 F.2d at 1299-1302. It is consequently within a court's ultimate discretion to adjust the fees to an amount it deems proper according to the Eleventh Circuit's parameters.   *See Columbus Mills, Inc. v. Freeland,* 918 F.2d 1575, 1580 (11th Cir. 1990) ("[T]he *Norman* Court left to the discretion of the district court the decision of whether to prune excessive hours"); *Cullens,* 29 F.3d at 1492 ("[W]e reemphasize that the district court has discretion in determining the amount of a fee award.   This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.") (quotation omitted).

### 1. *The Reasonable Hourly Rate*

The first step is to consider the reasonable hourly rate.   This rate is defined as "the prevailing market rate in the relevant legal community for similar services

13

by lawyers of reasonably comparable skills, experience and reputation." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1299).   The relevant market is "the place where the case is filed." *ACLU,* 168 F.3d at 427 (internal quotation marks and citation omitted).

Several factors may be considered in arriving at that prevailing market rate, as set forth in *Johnson v. Ga. Highway Express, Inc.* 488 F.2d 714, 717-719 (5th Cir. 1974).[2]   A movant is required to submit to a court satisfactory evidence to establish that the requested rate accurately reflects the prevailing market rate.   *See Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman,* 836 F.2d at 1299 (finding that the burden lies with the fee applicant to produce "satisfactory evidence that the requested rate is in line with prevailing market rates" and "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits.").   Ultimately, a court remains an expert on the issue of hourly

---

2      The 12 *Johnson* factors are as follows:
        (1) the time and labor required;
        (2) the novelty and difficulty of the questions;
        (3) the skill requisite to perform the legal service properly;
        (4) the preclusion of other employment;
        (5) the customary fee;
        (6) whether the fee is fixed or contingent;
        (7) the time limitations imposed by the client or circumstances;
        (8) the amount involved and the results obtained;
        (9) the experience, reputation and ability of the attorneys;
        (10) the undesirability of the case;
        (11) the nature and length of the professional relationship with the client; and
        (12) the awards in similar cases.

*Johnson*, 488 F.2d at 717-719.

rates in its community and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Loranger,* 10 F.3d at 781 (quoting *Norman,* 836 F.2d at 1303).

Plaintiff seeks an hourly rate of $550 for Steven Pertez, who has over 40 years' experience, and $135 an hour for his paralegal with the law firm Peretz Chesal & Hermann, P.I.   Plaintiff also seeks an hourly rate for four different attorneys with Newman Du Wors LLP based on their individual levels of experience including: (1) Derek A. Newman at $595 with over 20 years' of experience, (2) Keith Scully at $395 with over 20 years' of experience, (3) Rachel Horvitz at $285 with three years' experience, and (4) Tala Al Ghussein at $285 with one year of experience.[3]   And Plaintiff seeks $185 an hour for work completed by paralegals at Newman Du Wors LLP.

In exercising our own expertise in awarding fees in similar cases, together with a review of the record and supporting materials submitted with the motion, we find that Plaintiff's request for the rates charged by Mr. Peretz and his paralegal are reasonable.   *See Fla. Int'l Univ. Bd. of Trustees v. Fla.*, 2019 WL 3412159, at *5 (S.D. Fla. June 17, 2019), *report and recommendation adopted*, 2019 WL 5260154 (S.D. Fla.

---

[3]    The bill [D.E 20, Ex. B] shows that a Jason Sykes billed 0.7 hours at the rate of $395   But because Plaintiff fails to provide any detail on Mr. Syke's experience or credentials, we do not consider if his fees should be awarded.

Aug. 28, 2019) (finding that Mr. Peretz's rate of $525, discounted to $480, and his paralegal's rate of $125 was reasonable in 2019).

However, an adjustment is needed for some of the attorneys and the paralegals at Newman Du Wors LLP.   The rate for Mr. Newman is adjusted to $400 as Plaintiff provides no justification as to why his rate should be higher than the more experienced Mr. Peretz.   The rate for Ms. Al Ghussein is adjusted to $200, which is the market rate for a first-year attorney in South Florida, and the rate for the paralegals is adjusted to $135 to match the rate charged by Peretz Chesal & Hermann, P.I.   We do find the rates for Mr. Scully and Ms. Horvitz are reasonable. *See Intenze Prods., Inc. v. Dead Man Supplies Corp.*, 2017 WL 759036, at *4 (M.D. Fla. Feb. 9, 2017) (finding that a rate of $275 per hour was reasonable for an attorney with approximately four years of experience); *Gray v. Novell, Inc.*, 2012 WL 3871872, at *11 (M.D. Fla. Sept. 6, 2012) (reducing the rate of an attorney with five years of legal experience to $285 per hour); *See Townsend v. Let's of Ocala, LLC*, 2015 WL 4591927, at *2 (M.D. Fla. July 28, 2015), *report and recommendation adopted*, 2015 WL 5132776 (M.D. Fla. Sept. 1, 2015) (finding that a rate of $350 per hour was reasonable for an attorney with over ten years of experience).

## 2.  *The Reasonable Number of Hours Expended*

The second step of the lodestar analysis requires a court to determine the reasonable number of hours expended.   The award must exclude compensation for hours "that would be unreasonable to bill to a client and therefore to one's adversary

*irrespective of the skill, reputation, or experience of counsel.*"   *ACLU*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301) (emphasis in original).   A fee applicant bears the burden of establishing that the time for which compensation is sought was reasonably expended on the litigation and must provide a court with specific and detailed evidence that will allow for an accurate determination of the amount of fees to award.   *Id.*   If a fee applicant fails to exercise required billing judgment, a court is obligated to "[prune] out those [hours] that are excessive, redundant, or otherwise unnecessary."   *Id.*   As in the analysis of reasonable hourly rates, a court is presumed to be an expert in reviewing the number of hours expended on litigation for the purpose of attorneys' fees.   *Norman*, 836 F.2d at 1303.   Accordingly, it is "perfectly proper to award attorneys' fees based solely on affidavits in the record." *Id*. (citing *Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980)).

Plaintiff's counsel provided affidavits of work performed setting forth the nature of services provided and number of hours requested.   In reviewing the record independently under the Court's duty to award only those hours that are reasonable, the Court finds that the number of hours expended on certain tasks is excessive. Take, for instance, the billing entries related to a motion for alternative service.   Mr. Scully spent 10.7 hours preparing the motion.   And Mr. Newman, Mr. Peretz, Ms. Horvitz, and a paralegal spent over 13 hours revising and conducting research for it. All this on a six-page motion regarding service of process.   The time spent on this motion is clearly excessive, especially with four lawyers working on it that have over

eighty years' experience combined.

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citing *Loranger,* 10 F.3d at 783). A court may not, however, do both. *See Bivins*, 548 F.3d at 1351-1352 (explaining that "by requiring the district court to conduct either analysis instead of both, we ensure that the district court does not doubly-discount the requested hours").

Based upon all the relevant factors, legal principles, and the attached billing records, the Court finds that a 20% reduction is appropriate to account for the billing deficiencies discussed above. This equates to a total of $3,080 for Mr. Peretz (5.6 hours multiplied by $550/hour), $4,064 for Mr. Newman (10.16 hours multiplied by $400/hour), $14,662.40 for Mr. Scully (37.12 hours multiplied by $395/hour), $1,938 for Ms. Horvitz (6.8 hours multiplied by $285/hour), $160 for Ms. Al Ghussein (0.8 hour multiplied by $200/hour), $2,160 for the paralegal at Newman Du Wors LLP (16 hours multiplied by $135/hour), and $64.80 for the paralegal at Peretz Chesal & Hermann, P.I. (0.48 hours multiplied by $135/hour) for a grand total of $25,969.20 in fees. Accordingly, Plaintiff's motion for fees should be **GRANTED in part** and **DENIED in part**.

### F.     *Taxable Costs*

Plaintiff is also entitled to recover costs under Section 1117(a) and Fed. R. Civ.

P. 54(d).   A strong presumption exists in favor of awarding costs.   *Id.*   A court may tax as costs those expenses enumerated in 28 U.S.C. § 1920.   *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (absent explicit statutory or contractual authorization, federal courts are bound by the limitations set out in § 1920).   "To defeat the presumption and deny full costs, a district court must have a sound basis for doing so."   *Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000).   A court should not take into consideration the relative wealth of the parties, as it would undermine the presumption that Rule 54(d)(1) creates in favor of the prevailing parties.   *Id.*[4]

Upon the filing of a timely motion or bill of costs, which sets forth in detail the amounts requested, the opposing party has the burden of showing that the requested costs fall outside the scope of this statute or are otherwise unreasonable.   *See, e.g., Eugene v. 3Don & Partner Estate Group, LLC*, 2009 WL 996016, at *14 (S.D. Fla. Apr. 14, 2009) (finding that the burden lies with the challenging party to show that

---

[4]   The following costs are permitted under 28 U.S.C. § 1920:
(1)   Fees of the clerk and marshal;
(2)   Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3)   Fees and disbursements for printing and witnesses;
(4)   Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5)   Docket fees under section 1923 of this title;
(6)   Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

depositions were not related to an issue in the case at the time they were taken, and thereby show they were not wholly or partially "necessarily obtained for use in the case.").

Here, Plaintiff seeks $1,204.75 in total costs.   Specifically, $400.00 for the court filing fee, $504.95 for serving Defendant, $200 for the fee for Mr. Newman to appear *pro hac vice*, $15.40 for public access to court records, $61.75 for using Westlaw, and $22.65 for photocopies.   Courts have repeatedly held that filing fee costs are recoverable under 28 U.S.C. § 1920.   *See EEOC v. W & O, Inc.,* 213 F.3d 600, 623 (11th Cir. 2000); *Family Oriented Cmty. United Strong, Inc. v. Lockheed Martin Corp.*, 2012 WL 6575348, at *1 (M.D. Fla. Dec. 17, 2012) ("Fees of the clerk and marshal include filing fees are clearly taxable.") (citing 28 U.S.C. § 1920(1)). Likewise, the costs for photocopies are recoverable under § 1920.   *See Joseph v. Nichell's Caribbean Cuisine, Inc.*, 950 F. Supp. 2d 1254, 1259 (S.D. Fla. 2013) ("Photocopies are considered a taxable cost pursuant to § 1920(4) if they are necessarily obtained for use in the case.") (citing *McGregor v. Bd. of County Comm'rs for Palm Beach County,* 130 F.R.D. 464, 465 (S.D. Fla. 1990)).

Fees for service of a summons and subpoenas may only be taxed to the extent that they do not exceed the statutory fees authorized in section 1921.   Plaintiff attempted service of process on Defendant three times.   Because Plaintiff does not provide detailed invoices related to these attempts, we cap each attempt at $65.00, which is the statutory maximum per hour for service of process.   *See* 28 C.F.R. §

0.114 ("For process served or executed personally—$65 per hour (or portion thereof) for each item served by one U.S. Marshals Service employee, agent, or contractor, plus travel costs and any other out-of-pocket expenses.").   Therefore, Plaintiff is entitled to recover $195.00 in service of process costs.

District courts in the Eleventh Circuit have also repeatedly denied filing fees for a *pro hac vice* application as a recoverable item.   In the absence of any appellate authority showing otherwise, we agree with those courts and find that Plaintiff's request for $200 in *pro hac vice* costs fall outside the scope of § 1920.   *See Daniel-Rivera v. Everglades College*, 2017 WL 5197509, at * 6 (S.D. Fla. June 16, 2017) (finding persuasive cases from trial courts in the Eleventh Circuit holding that fees associated with *pro hac vice* motions are not recoverable under § 1920), *report and recommendation adopted*, 2017 WL 5197949 (June 30, 2017).   Similarly, Plaintiff fails to cite to any cases where fees related to using Westlaw or accessing public records were awarded.

Thus, Plaintiff's motion for costs should be **GRANTED in part** and **DENIED in part** with a total cost award of $617.65.

In sum, Plaintiff's motion for default judgment and attorneys' fees and costs should be **GRANTED in part** and **DENIED in part** with the injunctive relief sought granted and an award of $100,000.00 in statutory damages, $25,969.20 in attorneys' fees, and $617.65 in costs.

21

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for final default judgment and attorneys' fees and costs against Defendant [D.E. 19] should be **GRANTED in part** and **DENIED in part** with the injunctive relief sought granted and an award of $100,000.00 in statutory damages, $27,673.20 in attorneys' fees, and $617.65 in costs, including post-judgment interest accruing from the date such final judgment is entered.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.    Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.    28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 27th day of January, 2021.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge